**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SPECIALTY PUBLISHING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| UDA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The Plaintiff, SPECIALTY PUBLISHING COMPANY, by and through its undersigned counsel, hereby files its Complaint against the Defendant, UDA TECHNOLOGIES, INC., (hereinafter referred to as "UDA") and alleges, as follows:

## INTRODUCTION

1. This action arises from UDA's deliberate misuse of Specialty's trademarks, awards, and reputation to falsely elevate its own market standing and mislead consumers into believing that Constructech, one of the construction industry's most respected independent publications, has endorsed UDA and its products. UDA has extended this misconduct to its ConstructionOnline.com point-of-sale pricing page, where it displays the modified Constructech Top Products badge directly alongside the ConstructionOnline software it offers for sale.

2. Specialty is the publisher of Constructech and the creator of the "Constructech Top Products" awards, a nationally recognized program honoring innovation in construction technology. The credibility of these awards depends entirely on Specialty's independence and neutrality.

3. UDA received Constructech Top Products awards between 2008 and 2012. After those

1

years, UDA was no longer a recipient. Nevertheless, UDA modified Specialty's trademarked award logos to remove the year designations, falsely giving the appearance of ongoing recognition.

4. UDA compounded this deception by falsely claiming it has won Constructech Top Products awards twenty-four (24) times.

5. Additionally, UDA extracted a portion of a general statement made by Constructech's Editorial Director about all award recipients and repurposed it to create the false impression that Constructech had issued a specific endorsement of UDA as "the best the industry has to offer."

6. This was not accidental or benign. UDA used Specialty's reputation as a trusted, independent voice in the construction industry to fabricate the appearance of a testimonial and to mislead consumers into believing UDA enjoys a level of endorsement and approval it has never received.

7. These acts constitute counterfeiting, trademark infringement, false endorsement, false advertising, unfair competition, deceptive trade practices, and unjust enrichment under federal and Alabama law, in violation of 15 U.S.C. §§ 1114, 1116, 1117, 1125(a), and 1125(c), Ala. Code § 8-19-1 et seq., and Alabama common law.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Lanham Act, 15 U.S.C. § 1051 et seq.

9. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

10. Defendant UDA Technologies, Inc. is an Alabama corporation with its principal place of business in Alabama.

11. UDA created, controls, and maintains the website and marketing materials at issue from Alabama.

12. The false endorsements, misleading advertising, and trademark misuse giving rise to this action were conceived, directed, and implemented by UDA from Alabama.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred here.

## **PARTIES**

14. Plaintiff Specialty Publishing Company (hereinafter referred to as "Specialty") is a multimedia publishing company and the owner of the Constructech trademarks and awards.

15. Specialty publishes Constructech Magazine and related media properties, which have become authoritative voices in construction technology, innovation, and product development.

16. Defendant UDA Technologies, Inc. is a provider of construction technology software and related services marketed throughout the United States.

## **FACTS COMMON TO ALL COUNTS**

17. UDA Technologies claims it is a leading provider of construction technologies, software, application development, and architectural services for construction professionals in the United States, Canada, and 75 countries worldwide.

18. Specialty Publishing is a multimedia house that provides content across a variety of mediums—digital, podcast/radio, print, events, consulting, and much more.

19. Specialty Publishing has created a respected reputation for itself over decades of work within the construction industry.

20. Specialty Publishing produces a podcast with a large following.

21. At all times relevant, specifically between January 30, 2018 and August 9, 2024, Plaintiff held a valid and subsisting federal registration on the Principal Register of the United States Patent and Trademark Office for the stylized CONSTRUCTECH wordmark, Reg. No. 5,389,756 (Serial No. 87/346,976), filed February 23, 2017, registered January 30, 2018, in International Classes 016, 035, 041, and 042. Plaintiff was the rightful owner of the trademarks at issue, which were registered on the Principal Register:

| Mark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| CONSTRUCTECH | 5389756 | Jan. 30, 2018 | Magazines in the field of emerging technologies in construction, technology and product development trends and business in the field of construction |
| CONSTRUCTECH | 5389756 | Jan. 30, 2018 | Arranging and conducting business conferences in the field of emerging technologies and technology and product development trends |
| CONSTRUCTECH | 5389756 | Jan. 30, 2018 | Providing on-line magazines in the field of emerging technologies in construction, technology and product development trends and business in the field of construction; arranging and conducting educational conferences in the field of emerging technologies in construction, and technology and product development trends in the field of construction |
| CONSTRUCTECH | 5389756 | Jan. 30, 2018 | Providing a website featuring information on emerging technologies and trends, namely, product development technology and trends |

22.     Plaintiff has continuously used the CONSTRUCTECH stylized wordmark in interstate commerce since at least October 10, 1998 (first CONSTRUCTECH publishing),

4

together with related common-law marks including the CONSTRUCTECH TOP PRODUCTS award badge in which the registered CONSTRUCTECH wordmark is incorporated, more than a decade before Defendant's first use of any modified version of the marks. Plaintiff's common-law trademark rights in the CONSTRUCTECH marks accrued no later than 1998 and have continued without material interruption to the present.

23.     Through Plaintiff's long, continuous, and exclusive use, substantial marketing and editorial investment, industry recognition, and extensive third-party reference, the CONSTRUCTECH marks have acquired strong distinctiveness, secondary meaning, and substantial goodwill among construction and technology professionals and the relevant consuming public throughout the United States.

24.     The CONSTRUCTECH design mark, U.S. Reg. No. 5,389,756, registered on the Principal Register on January 30, 2018, covers International Classes 016, 035, 041, and 042, and protects, among other things, magazines, business and educational conferences, online magazines, and websites in the field of emerging construction technology, product development, and related promotional and informational services.

25.     Plaintiff's federal registration constitutes prima facie evidence of the validity of the registered mark, of Plaintiff's ownership, and of Plaintiff's exclusive right to use the mark in commerce in connection with the goods and services specified in the registration. 15 U.S.C. §§ 1057(b), 1115(a).

26.     The CONSTRUCTECH marks are widely recognized by the general consuming public of construction-technology services as a designation of source identifying Plaintiff, and have been the subject of long, continuous, and widespread media exposure, including through Plaintiff's magazine, online publications, conferences, podcast, and annual awards programs.

The marks are famous within the meaning of 15 U.S.C. § 1125(c). Peggy Smedley has over 30,000 followers on social media.

27.     Plaintiff and Defendant operate in overlapping channels of trade and address overlapping audiences. Plaintiff publishes and promotes content concerning construction-technology software and related services to the same construction-industry professionals whom Defendant targets as customers, including through the Constructech Top Products awards program, which expressly evaluates and promotes construction-technology products and services of the kind Defendant sells.

28.     Between 2008 and 2012, Defendant was a recipient of Constructech's Top Products award (a total of 10 awards were awarded in this time period).

29.     When presented with the award, Plaintiff provided Defendant with a badge of the award as pictured below:



30.      Defendant modified the above-pictured award by deleting the year of the award.

31.     Defendant modified the award as pictured below:



32. Defendant's website was riddled with the logo of the modified award.





33.    Defendant used the modified logo in marketing its products and throughout its websites.

34.    Specifically, Defendant prominently displayed a modified CONSTRUCTECH TOP PRODUCTS award badge (with the year designation removed) on the main shop banner of Defendant's e-commerce website, immediately adjacent to and overlaid with photographs of Defendant's software products offered for sale, including the "UDA ConstructionDocs Builder 2024," "Specifications 2024," and "Management 2024" product boxes.

35.    Defendant placed the same modified CONSTRUCTECH TOP PRODUCTS badge on individual product-detail pages for software products offered for sale, including, by way of example only, the "UDA ConstructionDocs Property Management" product page, which displayed the badge prominently next to the product image and immediately above the "$149.99" price and "Add to Cart" functionality, in the manner and location ordinarily used to display a

7

certification mark or seal of approval.

36.     Defendant displayed the same modified badge, together with the displaced "the best the industry has to offer" quotation attributed to "Constructech Magazine," on additional product and promotional pages throughout Defendant's websites, including pages associated with Defendant's "UDA ConstructionDocs" and "ConstructionOnline" product lines. Defendant's use of the modified badge on the ConstructionOnline product line is the subject of the further specific allegations set forth below.

37.     Defendant operates an "Awards and Recognition" page on its commercial website that displayed the modified CONSTRUCTECH TOP PRODUCTS badge (with the year designation removed) and the headline "24 Top Product Awards from Constructech Magazine," even though Defendant received only ten (10) Constructech Top Products awards (two each year in 2008, 2009, 2010, 2011, and 2012) and received no Constructech Top Products award in any subsequent year.

38.     The placement and function of the modified badge on Defendant's product sale pages mirrors the placement and function of an authorized certification mark or seal of approval: a reasonable consumer encountering the badge alongside a UDA software product offered for sale would understand the badge to communicate that Plaintiff Constructech has certified, endorsed, or recommended that specific software product.

39.     Defendant's commercial website itself constitutes an online publishing and informational service of the same general type for which the CONSTRUCTECH mark is federally registered in International Classes 041 and 042, including "providing on-line magazines" and "providing a website featuring information on emerging technologies and trends." Defendant's use of the modified CONSTRUCTECH TOP PRODUCTS badge on that

website was therefore use of a spurious mark in connection with services that overlap the goods and services for which the CONSTRUCTECH mark was registered.

40.    Defendant operates the consumer-facing e-commerce website ConstructionOnline.com, on which Defendant markets and sells subscription access to Defendant's ConstructionOnline cloud product on a monthly basis at price points including, without limitation, $0 per month ("Express"), $349 per month ("Pro Plus"), and $549 per month ("Enterprise").

41.    On the ConstructionOnline.com "Plans & Pricing" page—the principal point-of-sale page for the ConstructionOnline product—Defendant displayed the modified CONSTRUCTECH TOP PRODUCTS badge (with the year designation removed) under the headline "The award-winning solutions…." Defendant places this modified badge in immediate visual proximity to Defendant's ConstructionOnline subscription tiers and "Buy Now" and "Get Your 10-Day Trial" purchase calls-to-action.

42.    Defendant's display of the modified CONSTRUCTECH TOP PRODUCTS badge on the ConstructionOnline pricing page communicates to a reasonable consumer, falsely, that Plaintiff has certified, endorsed, or recommended Defendant's ConstructionOnline software at the precise point at which the consumer is asked to commit to a recurring monthly subscription.

43.    The ConstructionOnline pricing page is an interactive point-of-sale page rather than mere brand-building content. The modified badge's placement adjacent to the "Buy Now" button and tiered monthly pricing closely mirrors the placement and function of an authorized certification mark or seal of approval. A reasonable consumer encountering the modified badge on that page would understand it to communicate that Plaintiff has certified, endorsed, or recommended the ConstructionOnline software the consumer is then considering purchasing. A

9

true and correct screenshot of the ConstructionOnline.com pricing page reflecting the foregoing

is reproduced below:



The award-winning solutions...



Top 5 Recommended

by SoftwareAdvice.com



11 Top Product Awards

from Constructech Magazine

44.    Additionally, Defendant copied Plaintiff's 2017 award logo and posted it on its

website, as pictured below. Defendant, however, did not receive an award in 2017, and Plaintiff

never authorized Defendant to use the logo.



45.     In addition to copying, modifying and publishing the modified badges, Defendant falsely claimed to have won Constructech's Top Product award twenty-four (24) times.



46.     Additionally, Defendant has intentionally decontextualized, truncated, and continued long after 2008 to display an authentic 2008 quotation by Plaintiff's Editorial Director purporting to convey a current and product-specific endorsement of Defendant by Plaintiff that was never made.

47.     The quote at issue was made by Peggy Smedley, Editorial Director of Constructech, on or about February 7, 2008, in reference to the group of Constructech Top Products award winners and nominees as a whole for the year 2008—a group of approximately one hundred candidates and several winners and was not a product-specific endorsement or testimonial attributable to Defendant or to any specific Defendant product, then or thereafter.

48.     The quote was published on Defendant's website and was being used as a

11

marketing and advertising tool. (See below image).



49.    Defendant has used Plaintiff's likeness and industry influence to create a false claim that Plaintiff has sponsored Defendant.

50.    Defendant has leveraged Plaintiff's publicity and expertise to market and sell its products.

51.    The quote was strategically displayed on Defendant's website for more than fifteen years after it was made and alongside Defendant products that did not exist in 2008, falsely implied that Specialty Publishing Company has currently and explicitly endorsed UDA Technologies' specific software offerings, including products released years and decades after 2008, stating "…the best the industry has to offer." The original 2008 statement, in full context, reads: "With this listing of Top Products, Constructech hopes to bring our readers a look at the best the industry has to offer"—a collective statement about that year's award listing, not a Defendant-specific endorsement.

52.    This authentic 2008 statement was intentionally decontextualized, truncated, and republished long after the year to which it referred, in each case by UDA to mislead consumers into believing that UDA's then-current products have received the explicit and ongoing approval

12

and recommendation of Constructech that Constructech in fact never gave with respect to any specific UDA product or any UDA product released after 2008.

53.     This act of misrepresentation of a testimonial is a particularly egregious violation, as it not only infringes upon Plaintiff's rights but also actively deceives the market. Consumers rely on the credibility of endorsements from reputable sources like Constructech, and UDA's false claim exploits this trust for its own advantage.

54.     On August 1, 2024, Plaintiff notified Defendant of its infringement and illegal use and demanded it immediately cease to do so.

55.     Defendant ignored Plaintiff's notice and continued to willfully infringe on Plaintiff's trademark for at least an additional 8 months.

56.     On August 9, 2024, Specialty Publishing inadvertently abandoned its trademark by failing to file maintenance documents.

57.     On August 9, 2024, the United States Patent and Trademark Office cancelled Plaintiff's federal registration under 15 U.S.C. § 1058 for failure to file the required Section 8 declaration. The cancellation did not extinguish Plaintiff's common-law trademark rights, which have been continuously held by Plaintiff since at least October 10, 1998, and Plaintiff has since filed a new application to restore federal registration of the CONSTRUCTECH mark.

58.     The inadvertent abandonment of the trademark was due to Specialty Publishing relocating from Illinois to South Carolina and not receiving any notice reminding it to file the necessary documents to maintain the registration of the trademark.

59.     On April 10, 2025, Plaintiff filed suit in the Northern District of Illinois, and only after the filing of the lawsuit did Defendant remove the above-mentioned modified logos and quote. That matter was dismissed without prejudice for lack of jurisdiction over UDA.

60. Soon after learning of the abandonment, in July 2025, Plaintiff submitted the filing to regain its trademark.

61. Subsequently, on approximately August 28, 2025, Defendant filed an opposition claiming superior ownership of the trademark

62. Defendant counterfeited Plaintiff's trademark by modifying the logo at issue and using it without Plaintiff's authorization between 2018 and 2024.

63. The modified award badges used by Defendant incorporate the federally registered CONSTRUCTECH stylized wordmark identically or in substantially indistinguishable form within the meaning of 15 U.S.C. §§ 1116(d) and 1127. Defendant's alterations were limited to removing or changing the year designation while preserving the registered wordmark and the badge's overall commercial impression—the elements that signal Constructech's independent editorial endorsement.

64. Defendant used the counterfeit and infringing marks in connection with the advertising, promotion, and offering for sale of goods and services in interstate commerce, including by (a) displaying the modified CONSTRUCTECH TOP PRODUCTS badge on the shop banner of Defendant's e-commerce website immediately adjacent to product boxes for software offered for sale; (b) displaying the modified badge on individual product-detail pages for software offered for sale, including the "UDA ConstructionDocs Property Management" product page at the $149.99 price point, in the manner ordinarily used to display a certification mark; (c) displaying the modified badge together with the truncated 2008 quotation— decontextualized from its original reference to the 2008 Top Products winners collectively—on multiple product and promotional pages; and (d) displaying the modified badge on Defendant's "Awards and Recognition" page accompanied by the false claim of "24 Top Product Awards

14

from Constructech Magazine." These uses occurred on Defendant's commercial website—an online publishing and informational service that overlaps with the goods and services for which the CONSTRUCTECH mark is federally registered in International Classes 041 and 042.

65.     Defendant's conduct was willful within the meaning of 15 U.S.C. § 1117(b) and (c)(2). Willfulness is established independently of any post-notice conduct by Defendant's deliberate alteration of the registered design itself, including the removal of year designations and the affirmative fabrication of a 2017 award designation for an award Defendant never received. Defendant's refusal to cease after Plaintiff's written notice on August 1, 2024 corroborates but is not the sole basis for the willfulness showing.

<u>COUNT I</u>
<u>Trademark Infringement</u>

66.     Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

67.     At all relevant times, Plaintiff owned the Constructech design Trademark.

68.     Plaintiff was the first to use the trademark.

69.     Plaintiff's design is a valid trademark

70.     Defendant used the design in interstate commerce.

71.     Defendant used in commerce, without Plaintiff's consent, a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered CONSTRUCTECH TOP PRODUCTS design mark in connection with the advertising, promotion, sale, or offering for sale of goods and services, and such use is likely to cause confusion, mistake, or deception as to affiliation, connection, sponsorship, association, or approval, in violation of 15 U.S.C. § 1114(1). Defendant's infringing uses include, without limitation, Defendant's display of the modified mark on the ConstructionOnline.com pricing page in connection with the offering for sale of

15

monthly ConstructionOnline subscriptions at $0, $349, and $549 per month.

72.    Upon information and belief, Defendant profited from infringing on Plaintiff's trademark.

73.    The value and reputation of Plaintiff's trademark has been diluted as a result of Defendant's infringement.

74.    Likelihood of confusion is established under each of the seven factors recognized in this Circuit: (a) the CONSTRUCTECH mark is strong in both conceptual and commercial dimensions: conceptually, the term is arbitrary or, at minimum, suggestive as applied to magazines, online publications, conferences, and awards programs in the construction-technology field; commercially, the mark has acquired substantial recognition through more than two decades of continuous use since 1998, federal registration, and exposure through Plaintiff's magazine, online publications, podcast, conferences, and annual awards program; (b) the marks used by Defendant are identical or substantially indistinguishable from the registered design, differing only in year designation; (c) the parties' goods and services are closely related and target the same construction-technology audience; (d) the parties' trade channels and customers materially overlap; (e) the parties advertise in the same media, including industry websites, trade publications, and online channels; (f) Defendant's intent to trade on Plaintiff's goodwill is apparent from its deliberate alteration of the registered design, its fabrication of a 2017 award not in fact awarded, and its refusal to cease after written notice; and (g) on information and belief, actual confusion has occurred among construction-industry consumers who reasonably believed Defendant continues to be a Constructech Top Products honoree.

75.    Defendant's infringement was willful and deliberate independently of any post-notice conduct: Defendant deliberately altered Plaintiff's registered design (including by

16

removing year designations and affixing a 2017 designation for an award Defendant did not in fact receive), fabricated the false claim of twenty-four Top Products awards, and decontextualized, truncated, and temporally expanded an authentic 2008 statement by Constructech's Editorial Director to falsely manufacture the appearance of an ongoing, product-specific endorsement—each undertaken with knowledge that the use was unauthorized and false. Defendant's refusal to cease after Plaintiff's written notice on August 1, 2024 confirms but does not exhaust the willfulness showing. This is an exceptional case warranting enhanced damages and attorney's fees under 15 U.S.C. § 1117(a) and (b).

76.     Plaintiff has suffered and continues to suffer irreparable injury to the goodwill and reputation of the CONSTRUCTECH marks for which there is no adequate remedy at law, entitling Plaintiff to injunctive relief under 15 U.S.C. § 1116.

**COUNT II**
**False Endorsement**

77.     Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein

78.     UDA falsely represented that Specialty endorsed UDA and its products.

79.     UDA's misuse of the Constructech quote creates confusion as to sponsorship and approval.

80.     Consumers are likely to believe Specialty has recommended UDA when it has not.

81.     Specialty has suffered and will continue to suffer irreparable harm.

82.     Defendant's use, in commercial advertising and promotion, of (i) altered CONSTRUCTECH TOP PRODUCTS badges; (ii) the false claim of twenty-four Constructech

Top Products awards; and (iii) the decontextualized and temporally-expanded quotation attributed to Constructech, constitutes a false or misleading representation of fact likely to cause confusion or mistake, or to deceive consumers, as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff, in violation of 15 U.S.C. § 1125(a)(1)(A). Defendant's violation includes, without limitation, Defendant's display of the modified CONSTRUCTECH TOP PRODUCTS badge on the ConstructionOnline.com pricing page in connection with the offering for sale of ConstructionOnline subscriptions, falsely implying Plaintiff's endorsement, approval, or certification of that product.

83. Defendant's conduct was willful and undertaken with full knowledge that Plaintiff had not endorsed, sponsored, approved, or otherwise authorized Defendant's use of the marks or quotation.

84. Plaintiff has suffered, and continues to suffer, damages including loss of goodwill, dilution of editorial independence, and reputational harm, and is entitled to recover Defendant's profits, Plaintiff's damages, costs, and (because of willfulness) attorney's fees and enhanced damages under 15 U.S.C. § 1117(a).

## COUNT III
## False Advertising

85. Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

86. UDA made false or literally false-by-necessary-implication and misleading statements of fact in commercial advertising, including without limitation: (a) the display of modified Constructech Top Products award badges falsely representing that Defendant's products are then-current Top Products honorees; (b) the addition of a 2017 year designation to a

badge for an award Defendant did not in fact receive; (c) the claim that Defendant has won the Constructech Top Products award twenty-four (24) times; and (d) a 2008 quotation by Constructech's Editorial Director—originally made about the 2008 Top Products group of nominees and winners, and published in Defendant's own February 7, 2008 press release—decontextualized, truncated, and displayed by Defendant alongside products released years and decades after 2008 in a manner that falsely represents an ongoing and product-specific endorsement of Defendant by Plaintiff. Defendant's violations further include, without limitation: (e) the display of the modified Constructech Top Products badge on the ConstructionOnline.com pricing page in connection with the sale of monthly ConstructionOnline subscriptions, falsely representing that Defendant's ConstructionOnline product is a then-current Constructech Top Products honoree.

87. The statements are material and likely to influence purchasing decisions.

88. UDA knew or should have known the statements were misleading.

89. Specialty has suffered reputational and commercial injury, including loss of goodwill, diminished perceived independence of Plaintiff's editorial voice and awards program, and competitive harm. Defendant's misrepresentations occurred in commercial advertising and promotion, were placed in interstate commerce through the internet, online publications, and other channels reaching consumers and prospective customers, and have deceived or have the tendency to deceive a substantial segment of the relevant audience. The deception is material and likely to influence purchasing decisions because an independent third-party endorsement from a respected industry publication is a recognized signal of quality on which construction-industry purchasers rely.

## COUNT IV
## Counterfeiting

90.     Plaintiff incorporates by reference each and every allegation of this Complaint as though fully set forth herein.

91.     UDA used a "counterfeit mark" within the meaning of 15 U.S.C. §§ 1116(d)(1)(B) and 1127—namely, modified CONSTRUCTECH TOP PRODUCTS award badges that incorporate, identically or in substantially indistinguishable form, the federally registered CONSTRUCTECH stylized wordmark, Reg. No. 5,389,756— in connection with the advertising, promotion, sale, offering for sale, or distribution of goods or services, including services overlapping the online publishing, promotional, and informational services for which the registration issued.

92.     UDA knowingly and intentionally used the counterfeit trademark, while knowing it was a counterfeited trademark.

93.     The use of the counterfeit mark caused confusion, mistake, and/or deception among consumers.

94.     Specialty has suffered and will continue to suffer irreparable harm.

95.     Defendant's use of the counterfeit mark was intentional and willful within the meaning of 15 U.S.C. § 1117(b) and (c)(2), entitling Plaintiff at its election to recover treble actual damages or profits and attorney's fees under § 1117(b), or, in the alternative, statutory damages under § 1117(c) of up to $2,000,000 per counterfeit mark per type of goods or services for each willful use.

## COUNT V
## Unjust Enrichment (Alabama Common Law)

96.     Plaintiff incorporates by reference each and every allegation of this Complaint as

20

though fully set forth herein.

97.    Defendant unjustly gained financial gain and reputation by its unauthorized use of Plaintiff's editor's likeness.

98.    Defendant gained financial gain and reputation by its unauthorized use of Plaintiff's trademark.

99.    Defendant gained financial gain and reputation by its unauthorized modification of Plaintiff's trademark.

100.    Defendant's unjust enrichment is and was to Plaintiff's detriment.

101.    Defendant's retention of the financial benefit violates the fundamental principles of justice, equity, and good conscience.

102.    It is unjust to allow Defendant to retain its unlawful retention of the financial benefit.

**COUNT VI**

**<u>Alabama Deceptive Trade Practices Act</u>**

103.    Plaintiff incorporates by reference each and every preceding allegation as though fully set forth herein.

104.    Defendant's acts constitute deceptive trade practices in violation of Ala. Code § 8-19-5, including without limitation: (a) "[c]ausing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services" (§ 8-19-5(2)); (b) "[c]ausing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another" (§ 8-19-5(3)); (c) using deceptive representations regarding the source or certification of goods or services (§ 8-19-5(5)); and (d) "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce" (§ 8-19-

21

5(27)).

105.    Plaintiff has standing under Ala. Code § 8-19-10 to bring this private cause of action because Plaintiff has suffered monetary damage as a direct and proximate result of Defendant's deceptive acts.

106.    Defendant's conduct was knowing and willful.

## COUNT VII

### Alabama Common-Law Unfair Competition

107.    Plaintiff incorporates by reference each and every preceding allegation as though fully set forth herein.

108.    By the acts described above, Defendant has palmed off its goods and services as those of, or endorsed by, Plaintiff, and has otherwise engaged in unfair competition in violation of Alabama common law, causing damage to Plaintiff's goodwill and trade reputation.

109.    Defendant's conduct was undertaken with malice, oppression, fraud, or wanton disregard of Plaintiff's rights, entitling Plaintiff to compensatory damages, disgorgement, injunctive relief, and punitive damages under Alabama law.

### Prayer for Relief

110.    Compensatory Damages:

    a.    Profits Defendant made as a result of its infringement;

    b.    Reasonably royalties for the time Defendant infringed on the trademark;

    c.    Statutory damages under 15 U.S.C. § 1117(c) of up to $2,000,000 per counterfeit mark per type of goods or services for Defendant's willful counterfeiting;

    d.    Attorney's fees for Defendant's willful infringement;

    e.    Costs incurred by Plaintiff to protect its trademark;

f.    Treble damages under 15 U.S.C. § 1117(b), and/or treble actual damages under Ala. Code § 8-19-10(a)(2), for Defendant's willful infringement;

g.    Reasonable statutory damages;

h.    Punitive damages; and

i.    Any other relief the court deems just, reasonable, and necessary, including pre- and post-judgment interest at the maximum rate allowed by law.

Respectfully Submitted:

*/s/ Tripp Watson*
Tripp Watson
Intellectual Property Consulting, L.L.C.
2007 3rd Avenue North
Birmingham, Alabama
O: 205-545-7278
twatson@iplawconsulting.com

23